TODD KIM, Assistant Attorney General
THOMAS PORTS, JR., Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 305-0492
thomas.ports.jr@usdoj.gov

*Attorneys for Federal Defendants*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>DEB HAALAND, Secretary of the Interior, *et al.*,<br><br>Defendants. | No. 2:22-cv-06996-CAS-KS<br><br>Hon. Christina A. Snyder<br>District Court Judge<br><br>**DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date: March 13, 2023<br>Hearing Time: 10:00 a.m.<br>Ctrm: Courtroom 8D<br>United States Courthouse<br>350 W. First Street<br>Los Angeles, CA 90012 |

1.   DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS;

2.   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
     OF MOTION.

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

Defendants Debra Haaland, Secretary of the Interior; Bureau of Ocean Energy Management; and Douglas Boren, Pacific Region (collectively, Federal Defendants), hereby move to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, and the Plaintiff's complaint.

---

[1] This motion is made following the conference of counsel pursuant to L.R. 73 which took place on January 17, 2023. Plaintiff opposes this motion.

i

**MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

LEGAL BACKGROUND ............................................................................ 2

   I.     The Outer Continental Shelf Lands Act (OCSLA) ............ 2

   II.    The Administrative Procedure Act (APA) ......................... 4

FACTUAL BACKGROUND ....................................................................... 5

LEGAL STANDARD .................................................................................. 6

ARGUMENT .............................................................................................. 7

   I.     The Outer Continental Shelf Lands Act Does Not
         Authorize Citizen Suits for Alleged Maladministration of
         the Statute ........................................................................ 10

   II.    Plaintiff's § 706(1) Claim Must Be Dismissed Because
         Reviewing Plans From Time to Time Is Not a Discrete and
         Mandatory Duty that Can Be Compelled Under the
         APA ................................................................................. 10

   III.   Plaintiff's Alternative § 706(2) Claim—for Arbitrary and
         Capricious Review—Must Be Dismissed Because It Fails
         To Identify a Final Agency Action. ................................. 13

CONCLUSION ......................................................................................... 14

**MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Cases**

*Amer. Canoe Ass'n, Inc. v. U.S. Env'tl Prot. Agency,*
  30 F. Supp. 2d 908 (E.D. Va. 1998)............................................................ 12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................................... 6

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ...................................................................................... 6

*Bennett v. Spear,*
  520 U.S. 154 (1997) ......................................................................... 5, 13, 14

*Coto Settlement v. Eisenberg,*
  593 F.3d 1031 (9th Cir. 2010) ...................................................................... 6

*Ctr. for Biological Diversity v. Zinke,*
  260 F. Supp. 3d 11 (D.D.C. 2017) .............................................................. 13

*Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.,*
  112 F.3d 1283 (5th Cir. 1997)....................................................................... 4

*Friends of the Earth, Bluewater Network Div. v. U.S. Dept. of Interior,*
  478 F. Supp. 2d 11 (D.D.C. 2007) ........................................................ 11, 13

*Hells Canyon Pres. Council v. U.S. Forest Serv.,*
  593 F.3d 923 (9th Cir. 2010)....................................................................... 11

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001) ........................................................................ 6

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990) ................................................................................ 5, 13

*Mendiondo v. Centinela Hosp. Med. Ctr.,*
  521 F.3d 1097 (9th Cir. 2008)....................................................................... 6

*Nat. Res. Def. Council, Inc. v. Hodel,*
  865 F.2d 288 (D.C. Cir. 1988) ...................................................................... 2

*Norton v. S. Utah Wilderness,*
  All. (SUWA), 542 U.S. 55 (2004) ............................................... 1, 4, 11, 12

*Parker Drilling Mgmt. Servs., Ltd. v. Newton,*
  139 S. Ct. 1881 (2019) .................................................................................. 2

iii

*Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,*
  400 U.S. 62 (1970) ................................................................ 14

*San Francisco BayKeeper v. Whitman.,*
  297 F.3d 877 (9th Cir. 2002) ................................................. 12

*Sec'y of the Interior v. California,*
  464 U.S. 312 (1984) ................................................................ 2

*Town of Ogden Dunes v. U.S. Dep't of Interior,*
  No. 2:20-CV-34-TLS-JEM, 2022 WL 715549 (N.D. Ind. Mar. 10, 2022)
  ........................................................................................... 14

*Viet. Veterans of Amer. v. Cent. Intel. Agency,*
  811 F.3d 1068 (9th Cir. 2016) ......................................... 11, 12

*Zixiang Li v. Kerry,*
  710 F.3d 995 (9th Cir. 2013) ................................................. 6

**Statutes**

43 U.S.C. § 1332(3) ............................................................ 2, 12

43 U.S.C. § 1340(a)(1) ............................................................ 3

43 U.S.C. § 1344 ..................................................................... 2

43 U.S.C. § 1351 ..................................................................... 3

43 U.S.C. § 1351(c) ................................................................ 3

43 U.S.C. § 1351(h)(3) .................................................. 4, 11, 12

43 U.S.C. § 1351(i) ................................................................. 4

43 U.S.C. §§ 1331–1356 .......................................................... 2

5 U.S.C. § 551(13) ................................................................ 11

5 U.S.C. § 702 ........................................................................ 4

5 U.S.C. § 706(1) ............................................................... 4, 10

5 U.S.C. § 706(2) ............................................................... 5, 13

5 U.S.C. § 706(2)(A) .............................................................. 4

**Rules**

FED. R. CIV. P. 12(B)(6) ............................................................. 6

FED. R. EVID. 201 ..................................................................... 6

iv

**MOTION TO DISMISS**

# INTRODUCTION

Plaintiff's request that the Court compel Interior to review the development and production plans for four offshore oil and gas platforms should be dismissed because Plaintiff has not pleaded a valid claim for relief. Pursuant to the Outer Continental Shelf Lands Act (OCSLA), Interior will review development and production plans from time to time based on changes in available information and other onshore or offshore conditions. Plaintiff alleges, however, that Interior must conduct a review *right now* because of the time that has passed without a formal periodic review and because additional research about environmental and safety risks has been published during that time. In so alleging, Plaintiff fails to understand OCSLA, its purposes and structure, and how development and production plans fit into that structure. But most important for this motion, Plaintiff fails to state a claim that allows this Court to compel Interior to conduct the review Plaintiff contemplates.

First, Plaintiff's attempt to compel agency action through OCSLA's citizen suit provision fails because OCSLA does not create a private cause of action against the Department of the Interior or its officers for an alleged failure to follow statutory procedures. The Supreme Court, the Ninth Circuit, and other Circuit Courts have all reached this conclusion when interpreting OCSLA or similar citizen suit provisions.

Next, Plaintiff's request to compel agency action that it alleges was unlawfully withheld must be dismissed because Plaintiff does not assert the agency "failed to take a *discrete* agency action that it [was] *required to take*." *Norton v. S. Utah Wilderness All. (SUWA)*, 542 U.S. 55, 64 (2004). The decision of when and how to review development and production plans is discretionary and thus cannot be compelled under the Administrative Procedure Act.

1

Finally, Plaintiff's alternative cause of action—asserting *if* there was an agency action then that action was arbitrary and capricious—fails because Plaintiff alleges no *facts* to identify a final agency action. Although alternative pleading is permissible, a court cannot provide judicial review of a final agency action where the plaintiff has not identified such an action. Accordingly, all of Plaintiff's claims must be dismissed.

## LEGAL BACKGROUND

### I.    The Outer Continental Shelf Lands Act

The Outer Continental Shelf Lands Act of 1953 (OCSLA), 43 U.S.C. §§ 1331–1356, "gives the Federal Government complete 'jurisdiction, control, and power of disposition' over the [Outer Continental Shelf]." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1888–89 (2019). It provides for the "expeditious and orderly development [of the Outer Continental Shelf], subject to environmental safeguards[.]" 43 U.S.C. § 1332(3). "The statute sets only broad standards and leaves much to the Secretary's discretion in achieving its goals." *Nat. Res. Def. Council, Inc. v. Hodel*, 865 F.2d 288, 302 (D.C. Cir. 1988).

OCSLA prescribes a four-stage process for the development of offshore oil and gas resources: (1) the five-year program stage, (2) the lease-sale stage, (3) the exploration stage, then (4) the development and production stage. *Sec'y of the Interior v. California*, 464 U.S. 312, 337 (1984). At the first stage, the Secretary of the Interior (Secretary) adopts a schedule of proposed lease sales eligible to occur over a five-year period. 43 U.S.C. § 1344. At the second stage, the Secretary—through the Bureau of Ocean Energy Management (Bureau)—chooses whether and when to hold a sale, which lease blocks to offer in any sale, the terms of the sale, and whether to issue leases to any bidder. *Id.* § 1337(a)(1). At the third stage, lessees submit plans to the Bureau that explain the scope of potential

2

**MOTION TO DISMISS**

underwater exploration, the equipment to be used, and the general location of future wells. 43 U.S.C. § 1340(c)(3)(A)-(C). If an exploration plan is approved, the lessee is allowed to investigate the leased area for potential development. 43 U.S.C. § 1340(a)(1).

The fourth and final stage is at issue in this case. At the fourth stage, the Secretary may review and approve a lessee's plans for the development and production of oil and gas. 43 U.S.C. § 1351. In these plans, lessees set forth the work they intend to perform, proposed facilities and operations, environmental safeguards, safety standards, their expected rate of development and production, and any other relevant information the Secretary requires. 43 U.S.C. § 1351(c). Importantly, the plans do not freeze the applicable environmental and safety standards at the time of submission. *See* BOEM, Oil and Gas Lease of Submerged Lands (Form BOEM-2005) 1 (2017), https://www.boem.gov/sites/default/files/about-boem/Procurement-Business-Opportunities/BOEM-OCS-Operation-Forms/BOEM-2005.pdf ("This lease is subject to the Act, [and] regulations promulgated pursuant thereto[.]"). Lessees must comply with environmental and safety regulations subsequently promulgated by Interior. 43 U.S.C. § 1348(b)(2) ("It shall be the duty of any holder of a lease or permit under this Act to . . . maintain all operations within such lease area or within the area covered by such permit in compliance with regulations intended to protect persons, property, and the environment on the outer Continental Shelf[.]"). In addition to the Bureau of Ocean Energy Management, the Bureau of Safety and Environmental Enforcement is currently responsible for administering and enforcing environmental and safety regulations. *See* BOEMRE Reorganization Fact Sheet, Bureau, https://www.bsee.gov/fact-sheet/internal-guidance/boemre-reorganization-fact-sheet (last visited Jan. 17, 2023). Although the complaint includes

3

**MOTION TO DISMISS**

many allegations apparently aimed at highlighting environmental or safety risks, Plaintiff has not sued the Bureau of Safety and Environmental Enforcement.

Throughout production, the Secretary also has the authority to review approved plans. 43 U.S.C. § 1351(h)(3). This review is based on "changes in available information and other onshore or offshore conditions" impacting development and production. 43 U.S.C. § 1351(h)(3). If the Secretary determines conditions warrant review, she can order revision through a separate procedure. 43 U.S.C. § 1351(i). The Secretary can approve a lessee's revision if doing so "will lead to greater recovery of oil and natural gas, improve the efficiency, safety, and environmental protection of the recovery operation," or "avoid substantial economic hardship to the lessee." 43 U.S.C. § 1351(i).

## II.    The Administrative Procedure Act (APA)

The APA waives sovereign immunity for "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute[.]" 5 U.S.C. § 702. Review under the APA often involves complaints about the sufficiency of agency action—such as an agency rule making or a public planning process. *See* 5 U.S.C. § 706(2)(A) (outlining "arbitrary and capricious" review of agency action).

In narrow circumstances, a party may seek judicial review to "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1). The Supreme Court has held that agency action may only be compelled under section 706(1) for specific, discrete actions that the agency is legally required to take. *Norton v. SUWA*, 542 U.S. at 64; *see also Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997) (courts cannot compel agency action unless plaintiffs

4

"demonstrate that a government officer owes [plaintiffs] a legal duty that is a specific, ministerial act, devoid of the exercise of judgment or discretion" and its "performance must be positively commanded and so plainly prescribed as to be free from doubt").

When bringing a claim under section 706(2), a plaintiff has the burden of identifying a specific "agency action" alleged to be "arbitrary and capricious." 5 U.S.C. § 706(2); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990) (noting the plaintiff's "burden" to "set forth specific facts" identifying their claim). The identified action must also be final. *Bennett v. Spear*, 520 U.S. 154, 177 (1997). This finality requirement means that claims can only proceed for agency action that (1) marks the end of a decision-making process and (2) has legal consequences. *Id.* at 177-78.

## FACTUAL BACKGROUND

Plaintiff asks the Court to compel Interior to immediately review the development and production plans for the Beta Unit. That unit is located on the outer continental shelf off the coast of California. It consists of four platforms, each of which has an associated development and production plan. Three of the platforms, named Eureka, Ellen, and Elly, are operated by the Beta Operating Company LLC. Eureka and Ellen are offshore drilling platforms, while Elly is a processing facility. The fourth platform, called Edith, is a drilling platform run by DCOR, LLC.

Between 1977 and 1984, BOEM received and reviewed development and production plans for the four Beta Unit platforms. Each plan went through several stages of supplemental documentation and environmental assessments pursuant to the National Environmental Policy Act before approval. These plans and related documents are public records available on the Bureau's website. https://www.boem.gov/regions/pacific-ocs-

**MOTION TO DISMISS**

region/oil-gas/development-and-production-plans-pacific (last visited Jan. 17, 2023).

## LEGAL STANDARD

Federal Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts conduct a two-part inquiry here. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

A claim is facially plausible only when the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, the complaint must plead more than "labels and conclusions," or a "formulaic recitation of the elements of a cause of action." *Id.* Dismissal is proper when the complaint "(1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

When deciding a Rule 12(b)(6) motion, courts consider the facts alleged and any "materials incorporated into the complaint[.]" *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A court may also take judicial notice of "matters of public record." Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

6

# ARGUMENT

## I.    The Outer Continental Shelf Lands Act Does Not Authorize Citizen Suits for Alleged Maladministration of the Statute.

Plaintiff's first Count must be dismissed because the citizen suit provision of the Outer Continental Shelf Lands Act does not authorize suits against agencies for alleged failure to follow procedural requirements. OCSLA provides that persons with "a valid legal interest" may sue "any person, including the United States, and any other government instrumentality or agency . . . for any alleged violation . . ." 43 U.S.C. § 1349(a)(1); *see* Pl.'s Compl. ¶ 9. The provision allows for suits against regulated parties, including the government, for substantive violations of the act, not for failure to comply with required procedures. Courts including the Supreme Court and the Ninth Circuit have consistently interpreted similar citizen suit provisions the same way. Those courts also recognize a contrary interpretation would supplant the APA, and the Fifth and Tenth Circuits have applied this reasoning to OCSLA when rejecting citizen suits for alleged procedural defects.

In an analogous case, the Ninth Circuit dismissed claims that—like Plaintiff's claims here—sought to compel agency action based on a citizen suit provision. *City & Cnty. of San Francisco v. U.S. Dep't of Transp.*, 796 F.3d 993, 997 (9th Cir. 2015). There, following three natural gas pipeline explosions in California, San Francisco sued the U.S. Department of Transportation alleging that the agency failed to comply with the Natural Gas Pipeline Safety Act. *Id.* at 995, 997. San Francisco sued based on that act's citizen suit provision, which permits "suits against the United States or other entities 'for a violation of this chapter or a regulation prescribed or order issued under this chapter.'" *Id.* at 998 (quoting 49 U.S.C. § 60121(a)). The Ninth Circuit held, however, that by its terms, the statute's "plain

7

language[] allows only a very limited private right of action" that includes suits about "substantive statutory or regulatory violations" but excludes actions "to compel the Agency to perform non-discretionary regulatory duties." *Id.* at 998-99. The court's reasoning in dismissing San Francisco's claim also requires dismissal of Plaintiff's citizen suit claim.[2]

Focusing first on OCSLA's plain language, the citizen suit provision does not allow suits to compel regulatory actions because it allows suits for alleged "violations." Elsewhere in OCSLA, "violations" is used in reference to substantive issues. And in other citizen suit provisions, Congress has used "violations" in reference to substantive issues. Both of these facts are significant. *Id.* at 998 ("As part of statutory analysis, '[courts] look to similar provisions within the statute as a whole and the language of related or similar statutes to aid in interpretation.'") (quoting *United States v. LKAV*, 712 F.3d 436, 440 (9th Cir.2013)).[3]

The seminal case to interpret "violations" as used in citizen suit provisions is *Bennett v. Spear*, where the Supreme Court held a similar citizen suit provision addressing "violations" of the Endangered Species Act did not provide an avenue for judicial review of the Secretary's implementation of that act. 520 U.S. 154, 172 (1997). It explained that the

---

[2] Indeed, the Ninth Circuit referred to OCSLA's citizen suit provision "similar to the one at issue [there]." *Id.* at 1001.

[3] Many Circuit Courts have found similar citizen suit provisions do not authorize suits against the agency for maladministration. *See, e.g.*, *Our Children's Earth Found. v. U.S. E.P.A.*, 527 F.3d 842, 851 (9th Cir. 2008) (ruling citizen suit provision in Clean Water Act did not authorize suits for maladministration); *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008) (ruling citizen suit provision in CERCLA did not authorize suits for maladministration); *Physicians Committee for Responsible Medicine v. Johnson*, 436 F.3d 326, 334–35 (2d Cir. 2006) (ruling citizen suit provision in Toxic Substances Control Act did not authorize suits for maladministration).

8

**MOTION TO DISMISS**

provision allowed "private parties [to] enforce the *substantive* provisions of the ESA against *regulated parties*—both private entities and Government agencies—but is not an alternative avenue for judicial review of the Secretary's implementation of the statute." *Id.* at 172 (emphasis added). As one support for this conclusion, the Court considered how the word "violation" was used elsewhere in the statute. *Id.* at 173-174. It noted the act authorized civil penalties for any person who knowingly *violated* the act, and reasoned it was "aware of no precedent for applying [a civil penalties] provision against those who administer (as opposed to those who are regulated by) a substantive law." *Id.* The Court also noted the act provided for criminal penalties against any person who knowingly violated any provision, and reasoned it was unlikely that the act meant to subject the Secretary or his officers and employees to criminal liability for things like "knowing[]" maladministration. *Id.* This reasoning applies to OCSLA, which contains similar civil and criminal penalty provisions that refer to "violations." *See* 43 U.S.C. § 1350(b), (c).[4] And the Sixth Circuit has found use of similar language in a citizen suit provision to alone demonstrate that the provision only applies to substantive violations. *See* S*ierra Club v. Korleski*, 681 F.3d 342, 348-50 (6th Cir. 2012).

_____

[4] OCSLA's 60-day notice provision also demonstrates that a "violation" subject to citizen suit must be substantive, not an alleged procedural failure. *See* 43 U.S.C. § 1349(a)(2)(A). That provision prohibits suit unless a plaintiff gives 60 days' notice of an alleged "violation" to "the Secretary and any other appropriate Federal official, to *the State in which the violation alleged occurred or is occurring*, and to any alleged violator . . ." § 1349(a)(2)(A). The requirement for notice to the "State in which the violation alleged occurred" makes little sense for complaints about the Secretary's failure to act. Consistent with this common sense understanding of what constitutes a "violation" subject to citizen suit, Plaintiff did not provide 60 days' notice to any State.

9

**MOTION TO DISMISS**

OCSLA's citizen suit provision also applies only to substantive violations because a contrary interpretation would "effect a wholesale abrogation" of the APA's limits on judicial review and would create "an extraordinary regime" in which any minor procedural default could lead to litigation. *See Bennett*, 520 U.S. at 174. Indeed, the Fifth and Tenth Circuits have both applied this reasoning to the OCSLA citizen suit provision at issue here. The Fifth Circuit held plaintiffs could not "use the citizen suit provision as an avenue of obtaining judicial review . . . that is wholly independent of the judicial review procedures set forth in the APA." *OXY USA, Inc. v. Babbitt*, 122 F.3d 251, 258 (5th Cir. 1997). The Tenth Circuit held likewise. *Amerada Hess Corp v. Dep't of the Interior*, 170 F.3d 1032, 1034-35 (10th Cir. 1999). The Ninth Circuit cited these cases with approval in determining a "similar" citizen suit provision could not be used to compel agency action. *San Francisco*, 786 U.S. at 1001. And here, Plaintiff's attempt to compel agency action also abrogates APA law that provides courts can only compel agency actions that are discrete and required. For all these reasons, Plaintiff's OCSLA citizen suit claim should be dismissed.

## II.    Plaintiff's § 706(1) Claim Must Be Dismissed Because Reviewing Plans From Time to Time Is Not a Discrete and Mandatory Duty that Can Be Compelled Under the APA.

Because the Outer Continental Shelf Lands Act provides the Secretary with discretion about when and how it is appropriate to review development and production plans, Plaintiff's claim for agency action "unlawfully withheld or unreasonably delayed" under the APA, 5 U.S.C. § 706(1), must be dismissed. Plaintiff alleges a violation of section 1351(h)(3), which says that "[t]he Secretary shall, from time to time, review each [development and production] plan approved under this

10

**MOTION TO DISMISS**

section." 43 U.S.C. § 1351(h)(3), Compl. ¶ 83. The Supreme Court has explained that courts may compel agency action "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v SUWA*, 542 U.S. at 64. Review of development and production plans is not a discrete or a mandatory duty.

The requirement that a duty be discrete comes from the statutory definition of "agency action," which contains five specific categories of decisions: "agency rule, order, license, sanction, [or] relief[.]" 5 U.S.C. § 551(13); *Norton v. SUWA*, 542 U.S. at 62. The act of reviewing plans is not analogous to any of those categories. Rather, Plaintiff hopes the review will achieve broad changes to activities at the Beta Unit. Compl. Request for Relief ¶ 5-6 (requesting a halt of any oil and gas activity until BOEM reviews and revises the plan). The breadth of Plaintiff's challenge and requested relief demonstrates that its claim cannot proceed under § 706(1) *See, e.g.*, *Friends of the Earth, Bluewater Network Div. v. U.S. Dept. of Interior*, 478 F. Supp. 2d 11, 25 (D.D.C. 2007) (if a "court does not limit its review to 'discrete' agency actions, it risks embarking on the kind of wholesale, programmatic review of general agency conduct for which courts are ill-suited, and for which they lack authority").

Even if reviewing a development and production plan were a discrete action, it is not legally required. To be required, it is not enough for the agency procedure in question to simply be mentioned in the statute; rather, the "agency's legal obligation [must be] so clearly set forth that it could traditionally have been enforced through a writ of mandamus." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923,933 (9th Cir. 2010). This means that the "text of the statute or regulation contains an 'unequivocal command' about which an official has '*no discretion whatever*[.]'" *Viet. Veterans of Amer. v. Cent. Intel. Agency*, 811 F.3d 1068,

11

1083 (9th Cir. 2016) (emphasis added). The classic example of an action that would meet the discrete and mandatory criteria would be a failure to grant an order or promulgate a rule "by a statutory deadline." *SUWA*, 542 U.S. at 63.

The Outer Continental Shelf Lands Act does not establish a timeline or any event that triggers the review of production plans. Instead, the statute tells the agency to decide for itself whether "onshore [and] offshore conditions" warrant a review. 43 U.S.C. § 1351(h)(3). This is consistent with the Statute's purpose, which is to promote the "expeditious and orderly development [of the Outer Continental Shelf], subject to environmental safeguards[.]" 43 U.S.C. § 1332(3). The Statute sets up a phased structure through production and gives the Secretary authority to oversee, review, and require revisions to plans, but OCSLA does not impose automatic reviews. Automatic or periodic reviews may, in reality, turn out to be unnecessary, thus OCSLA entrusts the Secretary to determine when a review is warranted. This regime is a far cry from the "no discretion whatever" standard necessary to compel action. *Viet. Veterans of Amer.*, 811 F.3d at 1083.

The statutory phrase "from time to time" further confirms the agency's discretion to determine when a review is appropriate. In *San Francisco BayKeeper v. Whitman*, the Ninth Circuit held that the phrase "from time to time" gave the Environmental Protection Agency discretion to determine when to require certain water safety submissions under the Clean Water Act. 297 F.3d 877, 885 (9th Cir. 2002); *see also Amer. Canoe Ass'n, Inc. v. U.S. Env'tl Prot. Agency*, 30 F. Supp. 2d 908, 923 (E.D. Va. 1998) ("[C]ourts have generally held that use of the phrase 'time to time' does not create a nondiscretionary administrative duty."). Moreover, use of the word "shall" does not remove agency discretion where the statute

12

**MOTION TO DISMISS**

contains no deadlines or other mechanisms to remove agency judgment. *E.g.*, *Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 23 (D.D.C. 2017) (finding that a 'shall review' provision confers discretion as to when the "agenc[y] must *complete* any such review"); *Friends of the Earth*, 478 F. Supp. 2d at 27 (noting that, despite the use of "shall from time to time" language in an Executive Order, no "formal monitoring procedures" were required). Ultimately, Plaintiff's section 706(1) claim improperly asks the Court to substitute the Plaintiff's judgment for the agency's judgment. That claim should be dismissed.

**III. Plaintiff's Alternative § 706(2) Claim—for Arbitrary and Capricious Review—Must Be Dismissed Because It Fails To Identify a Final Agency Action.**

Plaintiff's purported "alternative" claim fails to allege any fact that could meet the APA's final agency action requirement and Plaintiff thus does not plead a plausible claim for relief. Plaintiff alleges that *if* "the Bureau has conducted [development and production plan] review[s] and determined revisions of the Beta Unit [plans] are not required" then that determination was arbitrary and capricious under 5 U.S.C. § 706(2). Compl. ¶ 88. Although alternative pleading is allowed, that does not excuse Plaintiff from complying with the requirement that it plead *facts* identifying final agency action—a fundamental pleading requirement in an APA case.

In order to secure judicial review of an agency action, a plaintiff must first identify the reviewable, specific "agency action" from which it alleges harm. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. at 884 (noting that the plaintiff has the "burden" of establishing the harm from the agency action before APA review). To be reviewable, this agency action must also be final. *Bennett*, 520 U.S. at 177. And finality is only met when the agency action (1) marks the end of a decisionmaking process and (2) has legal

13

**MOTION TO DISMISS**

consequences. *Id.* at 177-78. In other words, the agency action must first "not be of a merely tentative . . . nature" and second "be one by which 'rights or obligations have been determined.'" *Id.* (citing *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71 (1970)). Where a plaintiff has not alleged an identified final agency action, its case cannot proceed.

The District Court for the Northern District of Indiana recently dealt with a similar situation, and dismissed a plaintiff's purported § 706(2) claim. *Town of Ogden Dunes v. U.S. Dep't of Interior*, No. 2:20-CV-34-TLS-JEM, 2022 WL 715549 (N.D. Ind. Mar. 10, 2022). There, as here, the plaintiff's "entire theory of the case [was] premised on the assumption that the [agency had] *failed* to act," but the plaintiff asserted it was entitled to plead in the alternative for relief under § 706(2). *Id.* \*16. The District Court recognized that "pleading in the alternative is permissible," but nonetheless dismissed the alternative claim because the plaintiff had "not pleaded any facts identifying a final agency action by the [agency]." *Id.* Because the Plaintiff here has not pleaded any facts identifying a final agency action, its § 706(2) claim must be dismissed.

## CONCLUSION

Wherefore, Defendants respectfully request the Court dismiss Plaintiff's Complaint.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

*/s/ Thomas Ports, Jr.*
Thomas Ports, Jr.
Trial Attorney

14

**MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Defendants*

**MOTION TO DISMISS**

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendants, certifies that this brief contains 4,138 words, which complies with the word limit of L.R. 11-6.1.

_/s/ Thomas Ports, Jr._

Thomas Ports, Jr., Trial Attorney
January, 19, 2023

16

**MOTION TO DISMISS**

## CERTIFICATE OF SERVICE

I certify that on January 19, 2023, I filed the foregoing Motion to Dismiss using the Court's ECF system, which will provide service to all counsel of record.

*/s/ Thomas Ports, Jr.*
Thomas Ports, Jr., Trial Attorney
Attorney for Federal Defendants

17

**MOTION TO DISMISS**