UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
Kristen Monsell (By Zoom)

Attorneys Present for Defendants:
Thomas Ports, Jr. (By Zoom)
Alexis Romero (By Zoom)

**Proceedings:** DEFENDANT'S MOTION TO DISMISS (Dkt. 14, filed on January 19, 2023)

## I. INTRODUCTION

On September 28, 2022, plaintiff filed suit against Secretary of the Interior Debra Haaland, the Bureau of Ocean Energy Management ("BOEM"), and BOEM Pacific Regional Director Douglas Boren. Dkt. 1 ("Compl."). Under the Outer Continental Shelf Lands Act ("OCSLA"), the Secretary of the Interior may lease areas of the outer continental shelf for the purposes of exploring and developing the oil and gas deposits of submerged lands. Id. ¶ 28 (citing 43 U.S.C. §§ 1331–1356b). As part of the development process for the leasing, OCSLA requires lessees to submit development and production plans ("DPPs") to the Secretary of the Interior for review and approval. Id. OCSLA additionally requires that the "Secretary shall, from time to time, review each plan approved[.]" Id. Plaintiff alleges that the responsible federal agencies have failed, as required by OCSLA, to review the DPPs relating to the Beta Unit offshore platforms established in the 1980s off LA and Orange Counties. Plaintiff alleges that studies indicating that the platforms and pipelines have deteriorated in quality over the past four decades demonstrates that review of the DPPs, if any, was deficient.

On January 19, 2023, defendants filed a motion to dismiss plaintiff's complaint for failure to state a claim. Dkt. 14 ("Mot."). On February 17, 2023, plaintiff filed its opposition. Dkt. 16 ("Opp."). On March 13, 2023, defendants filed a reply. Dkt. 19 ("Reply").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
|---|---|---|---|
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

On April 17, 2023, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

### A.   Statutory Framework

OCSLA establishes a framework under which the Secretary of the Interior may lease areas of the outer continental shelf ("OCS") for purposes of exploring and developing the oil and gas deposits of submerged land. 43 U.S.C. §§ 1131–1356b. There is a four-stage process for the development of offshore oil and gas resources: "(1) formulation of a five year leasing plan by the Department of the Interior; (2) lease sales; (3) exploration by the lessees; [and] (4) development and production." Sec'y of the Interior v. California, 464 U.S. 312, 337 (1984); see also 43 U.S.C. §§ 1337, 1340, 1344, 1350.

The fourth stage is at issue in this case. At this stage, OCSLA requires lessees to submit DPPs to the Secretary of the Interior, who must "approve, disapprove, or require modifications" of a submitted DPP. Id. § 1351(h)(1). OCSLA and its implementing regulations set forth required content a DPP must provide, including the specific work to be provided under the lease and the environmental safeguards and safety standards to be implemented. See id. § 1351(c)(1)–(6); 30 C.F.R. §§ 550.241–.262. The Secretary of the Interior "shall disapprove a plan," *inter alia*, if:

> the Secretary determines, because of exceptional geological conditions in the lease areas, exceptional resource values in the marine or coastal environment, or other exceptional circumstances, that (i) implementation of the plan would probably cause serious harm or damage to life (including fish and other aquatic life), to property, to any mineral deposits (in areas leased or not leased), to the national security or defense, or to the marine, coastal or human environments, (ii) the threat of harm or damage will not disappear or decrease to an acceptable extent within a reasonable period of time, and (iii) the advantages of disapproving the plan outweigh the advantages of development and production.

43 U.S.C. § 1351(h)(1)(D).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
|---|---|---|---|
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

Crucially for this litigation, OCSLA requires periodic review of DPPs that have been approved. Section 1351(h)(3) provides:

> The Secretary shall, from time to time, review each plan approved under this section. Such review shall be based upon changes in available information and other onshore or offshore conditions affecting or impacted by development and production pursuant to such plan. If the review indicates that the plan should be revised to meet the requirements of this subsection, the Secretary shall require such revision.

Id. § 1351(h)(3).

Pursuant to 43 U.S.C. § 1334—"Administration of leasing"—the Secretary of the Interior has delegated certain authority of OCS leasing to the Bureau of Ocean Energy Management ("BOEM"). 30 C.F.R. § 550.284 establishes periodic review of DPPs by a BOEM regional supervisor: "The Regional Supervisor will periodically review the activities you conduct under your approved [DPP] and may require you to submit updated information on your activities. The frequency and extent of this review will be based on the significance of any changes in available information and onshore or offshore conditions affecting, or affected by, the activities in your approved [DPP]."

**B.   Pacific Outer Continental Shelf's Beta Unit Offshore Oil and Gas Development**

There are currently 23 platforms on the Pacific OCS, installed between 1967 and 1989. Compl. ¶ 44. The Beta Unit is located off the coast of Los Angeles and Orange Counties. Id. ¶ 46. It contains three offshore drilling platforms, Platforms Ellen, Edith, and Eureka, and one processing facility, Platform Elly. Id. Platform Ellen was installed in January 1980, Platform Elly was installed in March 1980, Platform Edith was installed in January 1983, and Platform Eureka installed in July 1984. Id. Production began from each of these platforms between January 1981 and March 1985.

BOEM's predecessor agency originally approved the DPPs for the Beta Unit platforms between 1980 and 1985. Id. ¶¶ 47–48. The Beta Unit DPPs and associated environmental analysis estimated that peak oil production would occur in the late 1980s and that oil production would end and the offshore platforms dismantled between 2007

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
|---|---|---|---|
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

and 2015. Id. ¶ 49. However, the Beta Unit platforms have not ceased operations. According to plaintiff, the Bureau of Safety and Environmental Enforcement's "database lists dozens of instances of non-compliance with environmental and safety regulations at the platforms in the Beta Unit since 2010 alone." Id. ¶ 50.

Plaintiff's complaint outlines the harmful effects of offshore oil and gas drilling, which it alleges exacerbates climate changes and threatens many animal species with extinction. Id. ¶ 51. For example, plaintiff's complaint describes how the "federal government permits platforms off California to discharge more than nine billion gallons of produced wastewater" containing toxic chemicals into the ocean each year, and that several oil spills have occurred off of California's coast in recent years. Id. ¶¶ 51–67.

Plaintiff's complaint also alleges specific problems associated with the Beta Unit, including an offshore pipeline spill connected to Platform Elly in October 2021. Id. ¶ 56. Additionally, plaintiff alleges that "new information indicates that the development and production plans at the Beta Unit are out of date, increasing the numerous harms inherent in offshore drilling activities." Id. ¶ 68. Similarly, because the original Beta Unit DPPs contemplated that the platforms would cease activity by 2015, the fact that operations continue into 2023 "means that the overall level of production—and associated volume of air and water pollution—may be significantly larger and more harmful than provided for in the DPPs." Id. ¶ 71.

In November 2021, plaintiff sent a Freedom of Information Act request to BOEM seeking all records from 2000 to 2021 generated in connection with the Beta Unit BPPs. In January 2022, BOEM responded that it had no such records. Id. ¶ 77. On this basis, plaintiff alleges that BOEM has neither reviewed nor required revision of the Beta Unit DPPs since they were approved in the 1980s. Id. ¶ 78.

## III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.' " Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    'O'

| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
|---|---|---|---|
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a 12(b)(6) motion, a court must accept as true all material allegations in the complaint, and all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1988). A court must read the complaint in the light most favorable to the non-movant. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). Where a court converts a motion to dismiss into a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

While generally a "court should 'freely give leave [to amend] when justice so requires,' " leave to amend is "properly denied" where "amendment would be futile," Carrico v. City & Cty. of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011) (quoting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
|---|---|---|---|
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

Fed. R. Civ. P. 15(a)(2)). Amendment would be futile if the plaintiff cannot state a cognizable claim. See Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011) ("Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.").

## IV. DISCUSSION

Defendants seek dismissal of plaintiff's claims for violation of OCSLA and the APA. The Court addresses each claim in turn.

### A. Plaintiff's OCSLA Claim for Failure to Review DPPs

Plaintiff brings a claim under OCSLA's citizen-suit provision for defendants' alleged failure to review the Beta Unit DPPs. The citizen-suit provision provides that "any person . . . may commence a civil action on his own behalf to compel compliance with this subchapter against any person, including the United States, and any other government instrumentality or agency . . . for any alleged violation of any provision of this subchapter or any regulation promulgated under this subchapter, or of the terms of any permit or lease issued by the Secretary under this subchapter." 43 U.S.C. § 1349(a)(1).

Defendants argue that the citizen-suit provision of OCSLA does not authorize suits against agencies for alleged failure to follow procedural requirements. Specifically, defendants contend that the citizen-suit provision's definition of "violation" is substantive and not procedural, such that the "provision allows for suits against regulated parties, including the government, for substantive violations of the act," but "not for failure to comply with required procedures." Mot. at 7. In support, defendants cite to the Supreme Court's decision in Bennett v. Spear interpreting a citizen-suit provision of the Endangered Species Act ("ESA") to only allow "private parties [to] enforce the substantive provisions of the ESA against regulated parties . . . [but not] judicial review of the Secretary's implementation of the statute." Id. at 7–8 (quoting 520 U.S. 154, 172 (1997)).

In opposition, plaintiff argues that the plain text of the citizen-suit provision, along with the broader statutory scheme and legislative history of OCSLA, properly enables plaintiff to bring a claim against defendants for failure to review the Beta Unit DPPs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**　　　'O'

| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
|---|---|---|---|
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

First, plaintiff cites to the citizen-suit provision, which authorizes "any person having a valid legal interest" to bring a lawsuit to "compel compliance with this subchapter against any person, including the United States. . . ." 43 U.S.C. § 1349(a)(1). According to plaintiff, the phrase "compel compliance" is the "precise language typically associated with mandamus actions." Opp. at 10 (citing 28 U.S.C. § 1361 ("Action to compel an officer of the United States to perform his duty")). Second, plaintiff explains that OCSLA specifies circumstances where the citizen-suit provision is inapplicable, but that "mandamus-type actions are not among them and should not be read into the statute." Id. at 10. Third, plaintiff cites to OCSLA's legislative history, which described that the provision "provides for citizens' suits against any person including . . . the Department of Interior or other agencies or departments with regulatory . . . authority as to OCS activities," and that the citizen-suit provision establishes the "method to challenge OCS decisions, enforcement or violations." Id. at 11–12 (citing H.R. Rep. 95-590, at 161 (1977)).

Additionally, plaintiff contends that defendants' cited Supreme Court and Ninth Circuit authorities, which address different federal statutes, are irrelevant for the purpose interpreting the OCSLA citizen-suit provision. Plaintiff argues that the ESA, which the Supreme Court analyzed in Bennett v. Spear, has a materially different citizen-suit provision and statutory scheme than that contained in OCSLA. Opp. at 13. Plaintiff notes that the Supreme Court relied upon the inclusion of a separate provision within the ESA authorizing suits to compel the Secretary of the Interior to perform certain nondiscretionary duties to interpret that the ESA citizen-suit provision only applies to "substantive" violations. Id. Similarly, plaintiff argues that Pipeline Safety Act was accompanied by legislative history which the Ninth Circuit interpreted in San Francisco v. U.S. Department of Transportation to conclude that Congress intended the Pipeline Safety Act's citizen-suit provision to apply narrowly. Moreover, the Pipeline Safety Act, like the ESA, contains a separate mandamus provision from the citizen-suit provision. Id. at 11. Finally, as to the Fifth and Tenth Circuit opinions addressing the OCSLA citizen-suit provision, plaintiff argues that those courts did not reach the issue of whether the provision provides for "mandamus-type actions." Id. at 14.

In reply, defendants argue that to the extent plaintiff argues that it brings a "mandamus-type action" under the OCSLA citizen-suit provision, such claim fails for the same reason that its APA Section 706(1) claim fails. Reply at 9–10. Additionally,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'

| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
|---|---|---|---|
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

defendants argue that this Court should follow the case law holding that citizen-suit provisions in other statutes "allow citizens to bring suits based on 'substantive provisions' of the statutes, but do not allow citizens to challenge alleged 'maladministration' of agency procedures." Id. at 11.

The Court concludes that the OCSLA citizen-suit provision permits plaintiff to bring its claim for relief. First, the Court finds that the plain text, statutory scheme, and legislative history of OCSLA all support plaintiff's ability to sue seeking defendants' compliance with their statutory duty to review the Beta Unit DPPs. As plaintiffs note, the plain text of the citizen-suit provision—permitting lawsuits against "any person, including the United States, and any other government instrumentality or agency" to "compel compliance" with the statute—appears to contemplate mandamus-type actions. 43 U.S.C. § 1349(a)(1). Unlike other federal statutes, such as the Endangered Species Act or the Pipeline Safety Act, OCSLA does not contain any separate provision establishing contrary procedures for mandamus relief. Additionally, the OCSLA legislative history supports a broad interpretation of the citizen-suit provision. It described that this provision "provides for citizens' suits against any person including . . . the Department of Interior or other agencies or departments with *regulatory* . . . authority as to OCS activities," and that the citizen-suit provision establishes the "method to challenge OCS *decisions, enforcement* or violations." H.R. Rep. 95-590, at 161 (emphasis added).[1]

Second, the Court finds that the case law does not foreclose plaintiff's claim under the OCSLA citizen-suit provision. Defendants' cited Supreme Court and Ninth Circuit cases, Bennett v. Spear and San Francisco v. U.S. Department of Transportation, addressed entirely different federal statutes. In Bennett, the Supreme Court addressed the citizen-suit provision of the Endangered Species ACT ("ESA"), which provided that "any person may commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof." 520 U.S. 154, 171 (1997) (quoting 16 U.S.C. § 1540(g)(1)(A)). The Supreme Court interpreted "violation" in Subsection A of the ESA citizen-suit provision

---

[1] Defendants make no argument as to why the OCSLA legislative history does not support this interpretation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
|---|---|---|---|
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

to refer exclusively to substantive and not procedural violations. The Supreme Court held so for two primary reasons—first, Subsection C of the ESA citizen-suit provision specifically provided that "any person may commence a civil suit on his own behalf . . . against the Secretary [of Commerce or the Interior] where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." Id. (quoting 16 U.S.C. § 1540(g)(1)(C)). The Supreme Court reasoned that Subsection C would be "superfluous" if the Subsection A "permitted suit against the Secretary for *any* 'violation' of the ESA." Id. at 173. Additionally, the Supreme Court looked to other uses of "violation" in the ESA, such as provisions relating to civil and criminal penalties, and concluded that "violation" as used throughout the entirety of the ESA could not be defined to include procedural violations because it did not "think it likely that the statute meant to subject the Secretary and his officers and employees to criminal liability" for "knowingly violat[ing] and provision of the ESA." Id. at 173–74.

In San Francisco v. U.S. Dep't of Transp., the Ninth Circuit interpreted the Pipeline Safety Act's citizen-suit provision to preclude a "mandamus-type action to compel the Agency to perform non-discretionary regulatory duties." 796 F.3d 993, 998–99 (9th Cir. 2015). There, the Pipeline Safety Act's citizen-suit provision provided that "a person may bring a civil action . . . for an injunction against another person (including the United States Government and other governmental authorities . . .) for a violation of this chapter or a regulation prescribed or order issued under this chapter." 49 U.S.C. § 60129(c). Similar to Bennett, the Ninth Circuit relied on the inclusion of a mandamus provision for the whistleblower protection provisions within the Pipeline Safety Act to hold that Congress "chose not to include a mandamus-type remedy" in the Pipeline Safety Act's citizen-suit provision. 796 F.3d at 999. The Ninth Circuit also cited the Pipeline Safety Act's legislative history to "buttress[] the conclusion that Congress did not intend to create a citizen suit mandamus remedy." Id.

As described above, however, because OCSLA's statutory scheme and legislative history are materially different from those of the ESA and Pipeline Safety Act, the Court does not believe that Bennett and San Francisco v. U.S. Department of Transportation are controlling here. In contrast to the ESA and the Pipeline Safety Act, which both contain separate mandamus provisions, OCLSA does not. And while the legislative history of the Pipeline Safety Act supports a narrow interpretation of that citizen-suit provision, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
|---|---|---|---|
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

legislative history of OCSLA specifically supports a broad application of the citizen-suit provision at issue here. H.R. Rep. 95-590, at 161 (explaining that the citizen-suit provision is applicable "against any person including . . . the Department of Interior or other agencies or departments with regulatory . . . authority as to OCS activities," and establishes the "method to challenge OCS decisions, enforcement or violations").

Defendants additionally cite to two out-of-circuit opinions from the Fifth and Tenth Circuits dismissing claims brought under the OCSLA citizen-suit provision. In Amerada Hess Corp. v. Dep't of Interior, the Tenth Circuit held that the OCSLA citizen-suit provision could not be used to "challenge a decision of the Secretary rendered in fulfillment of his duties under the Act" as it "would effect a wholesale abrogation of the APA's 'final agency action' requirement." 170 F.3d 1032, 1034 (10th Cir. 1999) (quoting Bennett, 520 U.S. at 174). In Amerada Hess, however, there was "no dispute that final agency action [had] occurred" in the case, where the Department of the Interior had issued an administrative determination requiring the plaintiff to pay a certain sum in additional royalties for offshore leasing. Id. at 1035. Here, plaintiff's operative theory of the case is that *no* agency action has occurred at all, in light of defendants' failure to review the Beta Unit DPPs.

Moreover, in OXY USA Inc v. Babbitt, the Fifth Circuit held that it did "not think Congress intended for the [OCSLA] citizen-suit provision to operate either as a means of obtaining 'umbrella' review for a series of agency decisions that were or will be otherwise subject to judicial review under the APA, or as an express avenue for appealing to the district court an initial agency decision that is subject to further review within the agency." 122 F.3d 251, 258 (5th Cir. 1997). There, however, the plaintiffs' OCSLA claim challenged a determination by the Department of the Interior relating to deductible costs for leasing royalty payments. The Fifth Circuit stressed, "[w]e emphasize that our decision today is limited to the unique facts of this case" Id. at 259 n.13. Accordingly, the analysis in those two cases is not persuasive for the purpose of evaluating plaintiff's OCSLA claim here.[2]

---

[2] As described above, in both Amerada and Babbitt, the Tenth and Fifth Circuits grounded their holdings in concerns that interpreting the OCSLA citizen-suit provision to allow challenges to the "decision of the Secretary rendered in fulfillment of his duties under the Act . . . would effect a wholesale abrogation of the APA's 'final agency action'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
|---|---|---|---|
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

Finally, even if the Supreme Court's interpretation of the Endangered Species Act in Bennett should somehow control this Court's interpretation of the OCSLA citizen-suit provision, plaintiff's OCSLA claim nonetheless seeks to redress a substantive violation of the statute. That is, defendants have provided no explanation as to why the failure to conduct *any* review of the approved Beta Unit DPPs should be considered "procedural." OCSLA itself appears to provide no standard to distinguish a "procedural" from a "substantive" violation of the statute. Indeed, as quoted above, the legislative history provides that citizen suits are the "method to enforce OCS decisions, enforcement *or* violations." H.R. Rep. 95-590, at 161 (emphasis added). That this language includes "decisions," "enforcements," and "violations" strongly suggests that the citizen-suit provision applies equally to "procedural" and "substantive" violations of OCSLA.

Accordingly, the Court denies defendants' motion to dismiss as to plaintiff's OCSLA claim.[3]

---

requirement." 170 F.3d at 1034. However, as plaintiff explains, it pled its APA claim alternatively to its OCSLA claim because the APA only provides a claim for relief when "there is no other adequate remedy[.]" 5 U.S.C. § 704. In the event that plaintiff's OCSLA citizen-suit claim and APA claim are mutually exclusive, the Court will be better equipped to resolve that question "at summary judgment with the benefit of [the] administrative record and any other admissible evidence." Nw. Env't Advocs. v. United States Env't Prot. Agency, No. 3:21-CV-01136-HZ, 2022 WL 1001777, at *9 (D. Or. Apr. 4, 2022) (denying motion to dismiss claims brought pursuant to the Clean Water Act and APA). This consideration also aligns with Amerada and Babbitt, which both addressed appeals of summary judgment orders (and not orders granting motions to dismiss).

[3] For the first time in their reply brief, defendants cite to 43 U.S.C. § 1349(c)(2), seemingly to suggest that this Court does not have jurisdiction over plaintiff's OCSLA claim. See id. ("Any action of the Secretary to approve, require modification of, or disapprove . . . any development and production plan under this subchapter shall be subject to judicial review only in a United States court of appeals for a circuit in which an affected State is located."). At oral argument, counsel for defendants reiterated this contention, while counsel for plaintiff cited to a Ninth Circuit opinion holding that this provision is only applicable to the initial plan approval process and not to subsequent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**             'O'

| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
|---|---|---|---|
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

### B.    Plaintiff's APA Section 706(1) Claim for Agency Action "Unlawfully Withheld or Unreasonably Delayed"

Plaintiff brings a claim for relief pursuant to Section 706(1) of the APA requesting that the Court "compel agency action unlawfully withheld of unreasonably delayed." Defendants argue that this claim must be dismissed, because under Supreme Court case law, courts may compel agency action "only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Mot. at 11 (quoting Norton v. S. Utah Wilderness, All. (SUWA), 542 U.S. 55, 64 (2004)). Here, defendants argue that the review of DPPs under OCSLA is neither a discrete nor mandatory duty. Defendants argue that review of DPPs is not a discrete duty because it is not an "agency action" defined by the APA to be an "agency rule, order, license, sanction, [or] relief[.]" Id. at 11 (citing 5 U.S.C. § 551(13)). Additionally, defendants argue that review of DPP is not mandatory because OCSLA does not establish a timeline or any event that triggers the review of DPPs and that the statutory phrase "from time to time" confers discretion to determine when a review is appropriate. Id. at 12.

In opposition, plaintiff argues that OCSLA's plain text creates a mandatory duty to review DPPs, as 43 U.S.C. § 1351(h)(3) provides that "the Secretary shall, from time to time, review each plan approved under this section." Plaintiff argues "shall" is typically considered mandatory language, particularly when Congress used the word "may" elsewhere within OCSLA. Opp. at 16; see e.g., 43 U.S.C. § 1351 ("The Secretary may approve any revision of an approved plan proposed by the lessee if he determines that such revision will lead to [etc.] . . ."). Plaintiff similarly contends that OCSLA's legislative history supports this interpretation. Opp. at 16–17. Additionally, plaintiff cites to various cases supporting the principle that a "deadline is not necessary to create a mandatory duty." Id. at 17–22.

---

review or revision of an approved plan. See Trustees for Alaska v. U.S. Dep't of Interior, 919 F.2d 119, 122 (9th Cir. 1990) (holding that 43 U.S.C. § 1349(c)(2) did not vest the Ninth Circuit with original jurisdiction and that the action should have been brought in a district court, "[s]ince this case deals with an existing plan, rather than a plan proposal"). To the extent that defendants believe this Court does not properly possess jurisdiction in this case, they may raise such grounds in any subsequent motion for summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
|---|---|---|---|
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

In reply, defendants contend that plaintiff's cases are inapposite and that plaintiff fails to persuasively distinguish the instant litigation from defendants' own cited authorities rejecting APA claims. Specifically, defendants argue that because OCSLA does not identify an event that triggers a duty to review DPPs, plaintiff cannot ask for a "broad order of sweeping compliance." Reply at 7. Additionally, defendants assert that OCSLA has a "multi-faceted mandate that starts with expeditious development" and that "because OCSLA directs the Secretary to balance competing interests regarding [DPPs], the statute naturally gives the Secretary discretion to determine when and if those plans require review." Id. at 9.[4]

The Court concludes that 43 U.S.C. § 1351(h)(3) creates a discrete and mandatory duty on the part of the Secretary of the Interior to review approved DPPs. First, the plain text and legislative history of the provision supports such a finding. As set forth above, 43 U.S.C. § 1351(h)(3) provides that "the Secretary shall, from time to time, review each plan approved under this section." Review of an approved DPP, here the Beta Unit DPPs, is a "discrete" "agency action," defined as "the whole or *a part* of an agency rule, order, license, sanction, relief, or *the equivalent or denial thereof, or failure to act*." 5 U.S.C. § 551(13) (emphasis added). Similarly, on its face, the language "shall, from time to time" establishes a mandatory duty to review DPPs. See, e.g., Murphy v. Smith, 138 S. Ct. 784, 787 (2018) ("[T]he word 'shall' usually creates a mandate, not a liberty[.]").

This is confirmed by the legislative history of OCSLA, which states that "[p]eriodic review of the plan in light of changes in available information and other onshore or offshore conditions is *required*." (citing H.R. Rep. 95-590, at 169) (emphasis added). As with the above section addressing the OCSLA citizen-suit provision, defendants raise no meaningful argument in response to this legislative history. While OCSLA affords discretion as to the *manner* in which defendants may conduct a review of DPPs, along with any ultimate conclusion that *revision* of a plan is necessary, defendants clearly lack the discretion to entirely forego predicate reviews.

---

[4] Additionally, for the first time in reply, defendants raise the argument that plaintiff's interests do not fall within the "relevant zone of interests" for BOEM's approval and review of DPPs. See Martinez-Serrano v. I.N.S., 94 F.3d 1256, 1259 (9th Cir. 1996) (" '[T]he general rule is that [parties] cannot raise a new issue for the first time in their reply briefs.' ").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
|---|---|---|---|
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

Moreover, in the absence of case law analyzing whether 43 U.S.C. § 1351(h)(3) creates a discrete and mandatory duty, the Court is persuaded by plaintiff's cited authorities finding that similar "from time to time" language in other statutory provisions created mandatory duties. In In re A Community Voice, the Ninth Circuit held that the Environmental Protection Agency ("EPA") had a "duty stemming from the [Toxic Substances Control Act and Paint Hazard Act] to update lead-based paint and dust-lead hazard standards in light of the obvious need." 878 F.3d 779 (9th Cir. 2017). There, the Paint Hazard Act instructed the EPA to " 'identify' whatever might constituted a 'lead-based paint hazard,' " while the Toxic Substances Control Act provided that appropriate "regulations *may* be amended from time to time as necessary." Id. at 784 (quoting 15 U.S.C. §§ 2681(1), 2687) (emphasis added). As the Ninth Circuit interpreted, "this statutory framework clearly indicates that Congress did not want EPA to set initial standards and then walk away, but to engage in an ongoing process, accounting for new information, and to modify initial standards when necessary to further Congress's intent. . . ." Id.

Applying Community Voice, a court in the Northern District of California in Earth Island Institute v. Wheeler found that Section 1321(d) of the Clean Water Act, providing that "the [EPA] may, from time to time, as the [EPA] deems advisable, revise or otherwise amend the National Contingency Plan," created a nondiscretionary duty. Earth Island Inst. v. Wheeler, 464 F. Supp. 3d 1138, 1144 (N.D. Cal. 2020) (citing 33 U.S.C. § 1321). The court noted the similarities between the language in the Clean Water Act provision and that of the statutes addressed in Community Voice, as well as the fact that a strict rule interpreting the lack of a date-certain deadline to make a statutory provision discretionary "has not been adopted by the Ninth Circuit." Id. at 1145–46.

Similarly, in Center for Biological Diversity v. U.S. E.P.A., a district court in the District of Columbia concluded that Section 231 of the Clean Air Act imposed a non-discretionary obligation on the EPA to make endangerment findings. 794 F. Supp. 2d 151, 162 (D.D.C. 2011). There, the statutory provision provided that the EPA "shall, from time to time, issue proposed emission standards applicable to the emission of any air pollutant from any class or classes of aircraft engines which in [its] judgment causes or contributes to air population which may reasonably be anticipated to endanger public health or welfare." Id. at 158. The court found that the requirement that the EPA "issue proposed emission standards" would be meaningless if the EPA had no duty to even

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
|---|---|---|---|
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

conduct endangerment findings in the first place. Id. at 160. Moreover, the court concluded that the provision "does not . . . lack any indication of when EPA's obligation to conduct endangerment findings is triggered" because it "requires EPA to act 'from time to time,' . . . a phrase that, while vague, allows for judicial review of an agency's allegedly unreasonable delay." Id. at 161; see also id. at 161–162 ("When a statute requires agency action at indefinite intervals, such as 'from time to time' . . . 'unreasonable delay' can be a meaningful standard for judicial review.") (quoting Am. Lung Ass'n v. Reilly, 962 F.2d 258, 263 (2d Cir. 1992)).

    All of these cases strongly support a finding that 43 U.S.C. § 1351(h)(3)'s language that "the Secretary shall, from time to time, review each plan approved under this section" creates a discrete and mandatory duty. In contrast, defendants' cited authorities are not helpful for evaluating OCSLA's statutory scheme. In San Francisco BayKeeper v. Whitman, the Ninth Circuit adopted the "constructive submission" doctrine for a provision in the Clean Water Act providing that "[e]ach state shall submit to the [EPA] from time to time" a list of daily pollution limits for each impaired waterbody within that state. 297 F.3d 877, 881 (9th Cir. 2002). The Ninth Circuit adopted other circuits' definitions of the constructive submission doctrine that "a complete failure by a state to submit TMDLs will be construed as a constructive submission of no TMDLs, which in turn triggers the EPA's nondiscretionary duty to act." Id. This case sheds little light on OCSLA, other than to undermine defendants' contention that "from time to time" phrasing generally confers discretion. Moreover, defendants' other cited cases do not concern "from time to time" language, see e.g., Ctr. for Biological Diversity v. Zinke, 260 F. Supp. 3d 11, 15 (D.D.C. 2017) (regulation stating agencies "shall continue to review their policies and procedures" did not create mandatory duty that the agencies "must come to a finite conclusion"), or the cases concluded that the agency was already conducting the actions outlined in the relevant provision, see Friends of The Earth, Bluewater Network Div. v. U.S. Dep't of Interior, 478 F. Supp. 2d 11, 27 (D.D.C. 2007) (executive order containing "shall from time to time" language "*requires* monitoring and appropriate response, which [defendant] does").

    Accordingly, the Court concludes that plaintiff has adequately stated its APA claim for agency action "unlawfully withheld or unreasonably delayed."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
|---|---|---|---|
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

### C. Plaintiff's APA Section 706(2) Claim

In its second claim for relief for violation of the APA, plaintiff alleges in the alternative that "to the extent [BOEM] has conducted such review and determined revisions of the Beta Unit DPPs are not required, that determination alternatively constitutes arbitrary and capricious agency action . . . and/or agency action made 'without observance of procedure required by law' under the APA." Compl. ¶ 88. Defendants seek dismissal of this alternatively-pled APA claim on the basis that plaintiff fails to identify a final agency action occurred—*i.e.*, there are no facts establishing when defendants reviewed any of the Beta Unit DPPs and what that review concluded. Mot. at 13–14.

In opposition, plaintiff argues that it pleads facts sufficient to state an alternative claim that BOEM's determinations that the Beta Unit DPPs do not need revision are arbitrary and capricious. According to plaintiff, it has adequately set forth the statutory requirements including BOEM's duty to require revisions to DPPs if the mandated "review indicates that the plan should be revised to meet the requirements of [OCSLA]." Compl. ¶ 5 (quoting 43 U.S.C. § 1351(h)(3)). Additionally, plaintiff argues it has sufficiently alleged that many of the circumstances warranting revision are present at the Beta Unit platforms. Opp. at 26 (citing Compl. ¶¶ 68–74).

The Court finds that plaintiff has not sufficiently stated a claim for relief. Specifically, plaintiff has identified no facts surrounding final agency action of review of the DPPs to give defendants fair notice of plaintiff's claim and the basis for it (for example, so that they might raise statute of limitations defense for any potential time-barred claim). Nor has plaintiff set forth how defendants have acted in an arbitrary or capricious manner. Other than generally alleging that conditions at the Beta Unit platforms have deteriorated and that oil and gas drilling harms the environment, plaintiff has not alleged that any review and determination by defendants "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.</u>, 463 U.S. 29, 43 (1983).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:22-cv-06996-CAS-KSx | Date | April 17, 2023 |
|---|---|---|---|
| Title | CENTER FOR BIOLOGICAL DIVERSITY v. DEBRA HAALAND ET AL. | | |

Accordingly, the Court grants defendants' motion to dismiss as to plaintiff's alternative APA claim that a review of the Beta Unit DPPs was conducted and was arbitrary and capricious. See Compl. ¶ 88.

### V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** defendants' motion to dismiss. The Court **DENIES** defendants' motion to dismiss as to plaintiff's OCSLA and APA Section 706(1) claims, and **GRANTS** defendants' motion as to plaintiff's APA Section 706(2) claim pled in the alternative, Compl. ¶ 88. Plaintiff's alternative claim is **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

|  | 00 : 21 |
|---|---|
| Initials of Preparer | CMJ |